IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VALEN KEEFER,** : | |
|       **Plaintiff** : | Civil No. 1:13-CV-1938 |
| : | |
|     **v.** : | |
| : | |
| **ERIE INSURANCE EXCHANGE,** : | |
| : | Judge Sylvia H. Rambo |
|       **Defendant** : | |

## **M E M O R A N D U M**

On February 10, 2014, a conference call was held between counsel and the court concerning a discovery dispute in the captioned case. Specifically, Defendant objects to: (1) Plaintiff's request that Defendant's neuropsychologist produce certain raw test data gathered from his examination of Plaintiff; and (2) Plaintiff's questioning of Defendant's insurance adjuster and supervisor regarding certain areas of inquiry. The court has received the raw test data for an *in camera* submission and has considered the parties' arguments in support of their positions with regard to the contested information. Thus, this dispute is ripe for disposition.

**I.**     **Background**

Because the court writes primarily for the parties, it only need set forth the following details essential to explain its reasoning.

This case arises out of a May 30, 2007 motor vehicle accident involving Plaintiff, Valen Keefer. Plaintiff suffered severe injuries from the accident. Defendant, Erie Insurance Exchange, insured Plaintiff at the time of the accident. Plaintiff's policy included an underinsured motorist ("UIM") provision which provided for coverage of injuries sustained by Plaintiff in an accident where the other driver's insurance policy did not provide sufficient reimbursement. The insurance policy carried by the other driver had a policy limit of $50,000.00. Plaintiff settled

her claim against the other driver for an amount less than the policy limit and then sought additional coverage under the UIM provisions in her policy.

Plaintiff's policy with Defendant has a UIM coverage limit of $250,000.00, and Plaintiff has demanded payment in the entire amount due to the alleged severity and permanency of the injuries. Plaintiff has provided Defendant with medical records and other information to help evaluate the claim. Plaintiff rejected Defendant's most recent settlement offer, which was in the amount of $10,000.00. Based on the representations of counsel during the conference call, Defendant does not dispute coverage under the policy but does dispute the amount of damages claimed.

Plaintiff filed a complaint on July 16, 2013, asserting claims against Defendant for breach of contract (Count I) and a violation of Pennsylvania's Bad Faith Statute, 42 Pa. Cons. Stat. § 8371 (Count II). (Doc. 1.) Defendant answered Plaintiff's complaint on August 27, 2013. (Doc. 7.) The parties are currently engaged in discovery that is set to conclude on April 1, 2014. (Doc. 10.) Plaintiff's counsel contacted the court about the instant discovery dispute regarding Plaintiff's desire to depose Defendant's insurance adjuster and supervisor with regard to Defendant's handling of the UIM claim. Based on counsel's representation, Defendant objects to Plaintiff's inquiring into the following subject matters:

1) The initial reserve value for Plaintiff's claim and the amount in which it has changed, if at all;

2) Claims manuals and any documents used to process and/or investigate Plaintiff's claims;

3) Any evaluations conducted regarding Plaintiff's demands or Defendant's offers;

4) Rationale as to why the claim has not been paid;

> 5) Impressions/conclusions and opinions of the adjuster(s) regarding the value and/or merit of the claim and/or defenses;
>
> 6) Complete un-redacted copy of the Claims file;
>
> 7) Names/Captions and location of all bad faith claims against the Defendant in the last five years;
>
> 8) Procedures followed or pursued to determine if a claim is to be paid; and
>
> 9) In what way Defendant deviated from its normal procedure in the investigation of Plaintiff's claims.

Additionally, Plaintiff requested Defendant's neuropsychologist produce raw test data from his examination of Plaintiff. The court has reviewed the raw test data *in camera*.

## II.     Legal Standard

Defendant resists disclosure of the aforementioned materials requested in discovery, citing work product protection, relevance, and undue prejudice due to the pending nature of the UIM claim. Federal Rule of Civil Procedure 26(b)(1) governs discovery. Under this rule, "discovery is not limited to information which is admissible at trial but instead is allowed 'if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.'" *Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir. 1982) (quoting Fed. R. Civ. P. 26(b)(1)). Although the discovery rules should generally be given broad and liberal treatment, these rules, like all of the Federal Rules of Civil Procedure, are subject to the overarching philosophy of Rule 1 that they "be construed to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. In keeping with this instruction, the relevance requirement of Rule 26(b)(1) must be "firmly applied." *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (quoting Fed. R. Civ. P. 26(c)). Relevance is defined in Rule 401 of the Federal Rules of Evidence, which states that

"relevant evidence" is evidence having "any tendency to make [the existence of] a fact [that is of consequence to the determination of the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. A party refusing to provide discovery on grounds that requests were overly broad, burdensome, oppressive, or irrelevant must show specifically how each question is overly broad, burdensome, or oppressive. *Josephs*, 677 F.2d at 992.

### III.     Discussion

Plaintiff claims Defendant breached the underinsured motorist policy. To establish a breach of contract claim in Pennsylvania, one must prove: "(1) the existence of a contract, including its essential terms[;] (2) a breach of a duty imposed by the contract[;] and (3) resultant damages." *McShea v. City of Phila*, 995 A.2d 334, 340 (Pa. 2010). Plaintiff further claims that Defendant's conduct in investigating her claim constitutes bad faith. To recover under the bad faith statute, the plaintiff must show, by clear and convincing evidence: "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)); *Kojsza v. Scottsdale Ins. Co.*, Civ. No. 3:12-cv-1602, 2014 WL 198569, *6 (M.D. Pa. Jan. 15, 2014) (citing *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 523 (3d Cir. 2012)) ("Bad faith must be proven by clear and convincing evidence.").

Actionable bad faith encompasses behavior beyond the denial of a claim without a reasonable basis, including an insurer's investigation of a claim. "[T]he broad language of [S]ection 8371 was designed to remedy all instances of bad faith conduct by an insurer . . . . Therefore, . . . [a]n action for bad faith may also extend to the insurer's investigative practices." *Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 415

(Pa. Super. Ct. 2004) (internal quotation marks and citations omitted). Implicit in the statute is "the requirement that the insurer properly investigate claims prior to refusing to pay the proceeds of the policy to its insured." *Bombar v. West Am. Ins. Co.*, 932 A.2d 78, 92 (Pa. Super. Ct. 2007).

The insurer may defeat a claim of bad faith by "showing that it had a reasonable basis for its actions." *Post*, 691 F.3d at 522. Even questionable conduct giving the appearance of bad faith is insufficient to establish bad faith so long as the insurer had a reasonable basis to deny coverage. *Id.* at 523.

The court will now address each of the areas of materials or inquiry Plaintiff seeks in turn.

### A. Reserves

Defendant urges the court to prevent discovery of reserve information, arguing that such information is not discoverable in a bad faith claim. "An insurance reserve is a pool of funds allocated to satisfy obligations that may arise under a claim." *Peco Energy Co. v. Insurance Co. of N. Am.*, 852 A.2d 1230, 1232 n.3 (Pa. Super. Ct. 2004). Pennsylvania law "requires insurance companies to set aside reserves upon notice of potential losses under their policies." *Fidelity & Deposit Co. of Md. v. McColloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996) (citing 40 P.S. § 71). There is competing treatment of whether reserve information is discoverable in a bad faith lawsuit. Some courts have determined that information related to reserve values is not discoverable. *See, e.g.*, *Kaufman v. Nationwide Mut. Ins. Co.*, Civ. No. 97-cv-1114, 1997 WL 703175, *1 (E.D. Pa. 1997) ("[P]rocedure for setting reserves . . . is confidential information which a court should not order to be disclosed unless the relevance of the information is clear and disclosure is necessary."). Other courts, however, have found that "reserves, of course, must have some relationship to the insurer's estimation of the insured's potential liability. Otherwise, the setting aside

of reserves would serve little, if any purpose." *North River Ins. Co. v. Greater N.Y. Mut. Ins. Co.*, 872 F. Supp. 1411, 1412 (E.D. Pa. 1995). Thus, the amount set aside for reserves "is certainly germane to any analysis [the defendant-insurer] made of" the claim's value and is relevant to the determination of whether the defendant-insurer acted in bad faith in processing the claim. *Id.*

Although the court appreciates the basis of Defendant's resistance, it nevertheless agrees with Plaintiff that the amount of reserve, if any, assigned to Plaintiff's UIM claim should be produced. Since Plaintiff claims that Defendant acted in bad faith during its investigation of Plaintiff's claim, a comparison between the reserve value of the claim and Defendant's actions in processing Plaintiff's claim could shed light on Defendant's liability under the bad faith statute. The reserve amount is, therefore, relevant or could potentially lead to relevant information, and the court will order disclosure of such information.[1]

### B. Claims Manuals, Procedures Generally Followed, and Procedures Followed in Evaluating and Investigating Plaintiff's UIM Claim[2]

Plaintiff seeks information from the insurance adjuster or supervisor regarding the claims manuals used to process and/or investigate Plaintiff's claims, the procedures followed or pursued to determine whether a claim is to be paid, and whether Defendant exercised a normal procedure in investigating and evaluating Plaintiff's UIM claim. Such material, she argues, is relevant to the reason Defendant

---

[1] To the extent Defendant argued that the reserve information is protected from discovery by the work product doctrine, the court cannot conclude that the reserve values were prepared outside the ordinary course of business. Under the work product doctrine, mental impressions and opinions of attorneys and their agents are protected from discovery when they are prepared in anticipation of litigation, as distinguished from materials prepared in the ordinary course of business. *See Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000).

[2] This discussion corresponds to subject matters listed as numbers 2, 8, and 9 set forth in Part I, *supra*.

denied satisfying her UIM claim, and is thus relevant to the bad faith cause of action. Defendant argues that the posture of this case, which includes both bad faith and UIM causes of action, militates against disclosure as unduly prejudicial, even if the manuals would be relevant to the bad faith lawsuit.

      The court will permit Plaintiff to inquire into the processes used to investigate Plaintiff's claims. As to the relevance of Defendant's policies for handling claims, inquiry into this area is reasonably calculated to lead to information relevant to Plaintiff's bad faith cause of action. Such material would allow Plaintiff to compare Defendant's standards for evaluating claims with the conduct of Defendant's agents in this matter. Although the fact that Defendant's agents departed from established standards or policies in handling Plaintiff's UIM claim may not alone establish bad faith, such information "is probative evidence" and could make it more likely that Defendant acted in bad faith in investigating Plaintiff's UIM claim. Given the liberal scope of federal discovery and the fact that such information may lead to the discovery of admissible evidence, Defendant's objection to these areas of inquiry will be overruled.

      **C.   Evaluations, Impressions, Conclusions, and Opinions Regarding the Value and Merit of Plaintiff's Claims and Demands and Defendant's Offers**

      Defendant opposes Plaintiff's inquiries regarding the insurance adjusters' impressions, conclusions, and opinions regarding the value and merit of Plaintiff's UIM claim and their evaluations of Plaintiff's demands and Defendant's offers. Mental impressions and opinions of a party and its agents are not generally protected by the work product doctrine unless they are prepared in anticipation of litigation. *See Safeguard Lighting Sys., Inc. v. North Am. Specialty Ins. Co.*, Civ. No. 03-cv-4145, 2004 WL 3037947, *2 (E.D. Pa. Dec. 30, 2004) (citing *United States v. Nobles*, 422 U.S. 225, 238 (1975)). To that end, "work product prepared in the

ordinary course of business is not immune from discovery." *Id.* (citing *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000)). Thus, the gravamen of a claim of work product protection necessarily requires an assessment of when litigation was anticipated, which is a determination not subject to a bright-line rule. As recognized by the Third Circuit, "Prudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993) (citing *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979)). Thus, whether litigation was reasonably anticipated is a fact-dependent inquiry. These facts are not developed here.

The court cannot determine the propriety of these areas of inquiry because it has not been provided with specific evidence demonstrating when litigation was reasonably anticipated. Therefore, the court can only say generally that Plaintiff shall be permitted to inquire into the adjuster's opinions, mental impressions, and conclusions that he or she formed while investigating the UIM claim in the ordinary course of business and not formed with litigation reasonably anticipated. Accordingly, the court will not rule on Defendant's objection to these areas of inquiry at this time.

### D. Rationale Underlying the Reason for Non-Payment

Defendant objects to Plaintiff's proposed inquiry regarding the adjuster's or supervisor's rationale of the reason Plaintiff's UIM claim had not been paid. Given the liberal scope of federal discovery and the fact that the reason for non-payment may be probative of whether Defendant acted in bad faith in the investigation of Plaintiff's UIM claim, Defendant's objection to this area of inquiry will be overruled.

### E. **Un-redacted Claims File**

The parties dispute whether Plaintiff is entitled to have access to the entire claims file created by Defendant for the underlying UIM case. Defendant argues that certain documents within the claims file are subject to the attorney-client privilege or work product protection and need not be produced.

An insurer-defendant's claims file may be discoverable in a bad faith case like this one, as information in that file on the defendant's actions related to the claim is relevant or could lead to potentially relevant information. *See, e.g.*, *Robertson v. Allstate Ins. Co.*, Civ. No. 98-cv-4909, 1999 WL 179754, *3 (E.D. Pa. Mar. 10, 1999) (finding the plaintiff could discover claims file in bad faith case, but applying the work product doctrine to limit the plaintiff's attempt to discover "the unredacted UIM claim file and all documents associated with the file"). Defendant does not appear to dispute that at least some portion of the file may be discoverable in this action.

The court will deny Plaintiff's request to the extent that she seeks Defendant's entire file without any redactions for attorney-client privilege. Defendant shall produce the claims file, and Plaintiff shall be entitled to question Defendant's agents on the content thereof. Defendant may, of course, assert privilege over portions of the case file and set forth the redacted portions in a privilege log, and Plaintiff may, of course, challenge those assertions through an appropriate motion with the court. The court cannot make a decision on whether particular documents in the file are subject to privilege, as such an assessment would require a motion that describes the particular documents at issue and an *in camera* inspection. Accordingly, Defendant shall produce to Plaintiff the claims file subject to its assertions of privilege.

The court will also deny Plaintiff's request to the extent that she seeks the entire claims file without any redactions for documents falling under the work-product doctrine. The work product privilege protects "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). The work product doctrine is not applicable merely because the material was prepared by or for the agents of an insurer. *Id*. An insurer's attorney "may invoke work product protection in favor of documents prepared by it in anticipation of litigation," but Rule 26(b)(3) was "not intended to protect all insurance claim files from discovery." *Mattison v. Imbesi*, Civ. No. 97-cv-2736, 1998 WL 720061, *2 (E.D. Pa. Oct. 6, 1998). "An insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate[,] and make a decision with respect to claims made on it by its insureds." *Id*. (quoting *Lyvan v. Harleysville Ins. Co.*, Civ. No. 93-cv-6145, 1994 WL 533907, *3 (E.D. Pa. Sept. 29, 1994)).

### F. Unrelated Bad Faith Actions

Defendant objects to Plaintiff's solicitation of information regarding unrelated bad faith claims against Defendant in the last five years. Past claims by other insureds are not relevant to the present bad faith action before the court. *See North River Ins.*, 872 F. Supp. at 1412. Accordingly, Plaintiff will not be permitted to inquire into unrelated bad faith actions.

### G. Raw Test Data

Defendant objects to Plaintiff's request for production of raw test data collected by Thomas S. Sacchetti, Ph.D., following a neuropsychological examination of Plaintiff. The court has reviewed the raw test data *in camera*. Essentially, Defendant seeks a protective order, citing the need for confidentiality of

the raw data gathered from the neuropsychological evaluation. In fact, in a letter to defense counsel, Dr. Sacchetti makes clear that the resistance is largely based on protecting the integrity of the examination methods and results. While Defendant's concerns are legitimate, they do not warrant a protective order to prevent disclosure.

The court has the discretion to limit the liberal discovery philosophy embodied by Rule 26(b)(1):

> The frequency or extent of discovery otherwise allowed under these rules or by local rule [shall be limited by the court] if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative . . . ; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2). It is well established that the party wishing to obtain a protective order has the burden of demonstrating that "good cause" exists for the order. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994); Fed. R. Civ. P. 26(c). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity[, as b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing. *Pansy*, 23 F.3d at 786 (internal citations omitted).

When considering whether to grant confidentiality orders, the court should apply a general balancing test:

> [T]he court . . . must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm to the owner of [a] trade secret or confidential

11

> information outweighs the need for discovery, disclosure [through discovery] cannot be compelled, but this is an infrequent result.
>
> Once the court determines that the discovery policies require that the materials be disclosed, the issue becomes whether they should "be disclosed only in a designated way," as authorized by the last clause of Rule 26(c)(7) . . . . Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public. Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously.

*Id*. at 787 (alterations in original). Most commonly, courts condition discovery of confidential documents by preventing the party obtaining the documents from sharing that document with others and by using that document for any purpose other than the present litigation. *Id*. Courts are given broad discretion in evaluating the competing interests in discovery disputes so that they have the necessary flexibility to "justly and properly consider the factors of each case." *Id*. at 789.

The extent of Plaintiff's injuries is a cental issue in this case. The requested data pertains to the tests and results therefrom that were conducted to assess the extent of Plaintiff's injuries. Thus, the liberal discovery policies dictate that the material is discoverable. However, to lull Defendant's concerns regarding uncontrolled disclosure, the court will order that the raw test data be produced following the execution of a confidentiality agreement designed to protect the confidential nature and trade secrets of the tests conducted by Dr. Sacchetti. The court is confident such an arrangement would satisfy both Plaintiff's need for discovery and Defendant's concern for test confidentiality. Accordingly, Defendant

will be compelled to produce the raw test data provided to the court following the execution of a confidentiality agreement.

**IV.** <u>**Conclusion**</u>

Based on the foregoing, the court finds that the proposed areas of inquiry and raw test data are subject to discovery.  Accordingly, the court will permit Plaintiff to present questions to the adjuster and supervisor consistent with this memorandum and will direct Defendant to provide the raw test data to Plaintiff, subject to the execution of a confidentiality agreement.

An appropriate order will issue.

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated:  March 7, 2014.